UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                              DECISION and ORDER

     v.

                                              9-CR-170V

STEVE S. JABAR and
DEBORAH BOWERS,

               Defendants.

_____

## Background

       This matter is before the Court on the government's motion to quash subpoenas

served on the Federal Bureau of Investigation ("FBI") and the Terrorist Screening

Center.

       Upon the defendants' application, this Court signed an order directing the United

States Marshals Service to serve Rule 17(c) subpoenas on the FBI and the Terrorist

Screening Center, among other entities.  *See* Docket Item 303.  The subpoenas seek

documents and materials related to communications between the agents who

investigated the instant criminal case and individuals employed by the FBI and the

Terrorist Screening Center.  *See* Docket Item 348-1 at 3, 5.  These documents and

materials correspond to the time when defendant Steve S. Jabar was employed by the

Department of Homeland Security as an Asylum Officer and by the Department of

Defense as a member of the Multi-National Force in Baghdad, Iraq – between 2002 and

2009.  *See id.*  Moreover, the defendants describe the categories of documents in

general terms, introduced by such phrases as "any correspondence," "any records or documents," and "all records."  *See* Docket Item 348-1 at 3.

On July 13, 2016, the government moved, on behalf of the FBI and the Terrorist Screening Center, to quash the subpoenas served upon those entities.[1]  *See* Docket Items 341, 348.  In support of its motion, the government raised the argument that the defendants did not satisfy the requirements of Rule 17(c).  *See* Docket Item 341 at 5; Docket Item 348 at 2-3.  The defendants then filed a response to the government's motion.  Docket Item 350.  The Court held oral argument on the motion to quash on July 15, 2016.

Because the defendants have shown neither how the documents they seek are relevant nor that they seek the documents in good faith and not as part of a "fishing expedition," the government's motion to quash is granted.

## Discussion

I.  **Rule 17(c)**

Rule 17(c) of the Federal Rules of Criminal Procedure governs the issuance of subpoenas *duces tecum*.  The rule states, in pertinent part, that a witness may be ordered to "produce any . . . papers, documents, data, or other objects . . . in court

---

[1] Both in their opposition papers and during the oral argument, the defendants argued that the United States Attorney's Office does not have standing to move to quash the subpoenas.  *See* Docket Item 350 at 16.  But because the FBI and the Terrorist Screening Center – an organization administered by the FBI – both are entities of the United States government, the subpoenas served on them undoubtedly "infringe[ ] on a legitimate interest of the party moving to quash[,]" as required for the government to have standing to move to quash a subpoena served on a nonparty.  *See United States v. Nachamie*, 91 F. Supp. 2d 552, 559-560 (S.D.N.Y. 2000).  The government has standing under the *Nachamie* analysis, but that analysis is not even necessary here because all entities involved – the United States Attorney's Office, the FBI, and the Terrorist Screening Center – are part of the United States government, which is a party to this case.

before trial or before they are to be offered into evidence." Fed. R. Crim. P. 17(c)(1).

The text of Rule 17(c)(1) does not impose any requirements, but to survive a motion to

quash, the subpoenaed materials must be "reasonable" so that compliance with the

subpoena is not "oppressive." *See* Fed. R. Crim. P. 17(c)(2).

Courts interpreting Rule 17(c) have used a four-factor test to decide whether a

defendant has demonstrated that he or she is entitled to subpoenaed documents. *See*

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). Under the *Nixon* test, to obtain

documents through a Rule 17 subpoena, a defendant must show:

> (1) that the documents are evidentiary and relevant; (2) that
> they are not otherwise procurable reasonably in advance of
> trial by the exercise of due diligence; (3) that the party
> cannot properly prepare for trial without such production and
> inspection in advance of trial and that the failure to obtain
> such inspection may tend to unreasonably delay the trial;
> and (4) that the application is made in good faith and is not
> intended as a general "fishing expedition."

*Id.*; *see also United States v. Ceballo*, 2003 WL 21961123, at *1 (S.D.N.Y. Aug. 18,

2003) (citing the *Nixon* factors in the motion-to-quash context); *United States v.*

*Weissman*, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (same). Some courts

have distilled these four factors down to three and have described the *Nixon* test as

"three hurdles" a defendant "must clear" to obtain a Rule 17(c) subpoena: relevance,

admissibility, and specificity. *See, e.g.*, *Nixon*, 418 U.S. at 700.

A defendant who seeks a subpoena has the burden to show that he or she has

satisfied the requirements of Rule 17(c). *See Ceballo*, 2003 WL 21961123, at *1 ("A

defendant seeking the production of documents pursuant to Rule 17(c) has the burden

of demonstrating [that the subpoenaed materials satisfy the *Nixon* test].").  In the

context of a motion to quash, after the party moving to quash challenges the

3

subpoena's compliance with Rule 17(c),[2] the defendant who sought the subpoena must rebut that claim and show how the subpoenaed materials satisfy the requirements. *See Weissman*, 2002 WL 31875410, at *1 ("Because Defendant has failed to satisfy the *Nixon* standards, the motion to quash the subpoena is granted.").

In support of its motion to quash here, the government argued, in part, that the defendants did not demonstrate how the subpoenas and the documents they seek satisfy the Rule 17(c) and *Nixon* requirements. Docket Item 341 at 5 ("[T]he defense has failed to show that the documents sought are evidentiary and relevant to the pending prosecution, that they are made in good faith rather than as part of a general fishing expedition, that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence and that [the defendants] cannot properly prepare for trial without such production."). This Court therefore will address the *Nixon* factors.

## II.   *Nixon* Factors

### A. Evidentiary and Relevant

To survive the government's motion to quash, the defendants first must show that the materials they seek through the subpoena are evidentiary and relevant. *See Nixon*, 418 U.S. at 699. In the pretrial subpoena context, courts sometimes apply this factor to prohibit defendants from using Rule 17(c) to obtain impeachment materials. *See Weissman*, 2002 WL 31875410, at *1 ("[S]everal cases articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes.").

---

[2] Although the motion to quash triggers the court's analysis of the subpoena, the party moving to quash has no burden with respect to a Rule 17(c) challenge; rather, ensuring a party's compliance with Rule 17(c) is the court's responsibility. *See United States v. Weissman*, 2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002) ("[I]t is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c).").

But as this Court explained in its order authorizing issuance of the subpoenas, other courts have issued Rule 17(c) subpoenas for impeachment materials before trial. *See* Docket Item 303 at 3-4. Therefore, the fact that the defendants seek documents related to impeachment material is not enough, by itself, to prevent the defendants from showing that the documents they seek are evidentiary and relevant.

Nevertheless, the defendants have failed to show relevance. The defendants argue that the necessary relevance arises from the bias and malice of the agents involved in the investigation underlying this prosecution. *See* Docket Item 350 at 9-11. But the documents described in the "schedules of items included" in the subpoenas call for communications between the investigating agents and others employed by the FBI and the Terrorist Screening Center regarding Jabar's employment with the Department of Homeland Security and the Department of Defense – something that has nothing to do with this case. *See* Docket Item 348-1 at 3, 5.

Moreover, defense counsel argues that these documents are relevant for impeachment purposes because they might uncover evidence that the defendants could use to challenge a witness's credibility at trial by attacking the witness's bias or malice in initiating and conducting the investigation. *See* Docket Item 350 at 9-11. In other words, the defense appears to argue that the documents are relevant – for impeachment purposes or otherwise – because they might show *why* the government brought the instant case against the defendants, and specifically against Jabar: that is, because someone in the government might have suspected that Jabar was a terrorist. *See id.* at 9 (referring to the "Motion for Supplemental Discovery," where the defendants

laid out the theory behind their claim that the government maliciously investigated and initiated this case).[3]

Such discovery might be relevant to a defense of selective prosecution,[4] but it is not relevant for the purposes of the trial.  Indeed, even in the selective prosecution context, a defendant is entitled to receive such discovery only insofar as his or her defense "respon[ds] to the Government's case in chief."  *United States v. Armstrong*, 517 U.S. 456, 462 (1996) (in the Rule 16 context, differentiating between material that is not discoverable because it relates to defenses that challenge a prosecutor's conduct, a "sword," and material that is discoverable because it relates to defenses that challenge whether the defendant committed the crime charged, a "shield").  Even though the defendants seek subpoenas and not Rule 16 discovery, the limitation on discovery described in *Armstrong* applies equally here because Rule 17(c) subpoenas served on the government cannot expand the scope of Rule 16 discovery.  *See United States v. Tucker*, 249 F.R.D. 58, 62 (S.D.N.Y. 2008) ("[T]he Supreme Court . . . held that . . . a criminal defendant [could] issue a Rule 17(c) subpoena on the government, but that because Rule 16 obligates the government to disclose certain material to the defendant, the defendant's Rule 17(c) subpoena could not exceed the scope of Rule 16.")  And to

---

[3] The Court is very well acquainted with this aspect of the defense, as this theory has been part of the discussion in almost every one of the numerous status conferences and oral arguments held since the undersigned took over this case.

[4] The Supreme Court has described a selective prosecution defense as one that "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for [other] reasons."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  This Court understands that the defendants have not raised a selective prosecution defense here.  But in several court appearances, the defendants have suggested that they have been prosecuted because of some bias on the government's part, which, as it was in *Armstrong*, is an "independent assertion that the prosecutor brought the charges for [other] reasons" and not "a defense on the merits to the criminal charge itself."  *See id.*

6

borrow the *Armstrong* court's terminology, the defendants have not demonstrated how the materials they seek through the subpoenas are relevant to their "shield" – refuting the government's case in chief – in this case.

The *Armstrong* court's analysis of a criminal defendant's right to discovery is in line with the limitation of a defendant's right to present evidence at trial.  The United States Constitution does not guarantee a criminal defendant the right to present evidence at trial that is irrelevant to the charges the government proves in its case in chief.  *See United States v. Thompson*, 2016 WL 1584382, at *3 (W.D.N.Y. Apr. 6, 2016) ("It does not follow [from the Fifth Amendment], however, that a criminal defendant has a right to offer evidence that is irrelevant to the Government's charges."); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is . . . inadmissible . . . .").  If a relevance requirement that limits a defendant's right to present evidence at trial comports with the Constitution, then a similar limit on a defendant's right to receive documents and other materials under Rule 17 also passes muster.

Because the defendants have not sustained their burden of showing why the documents and materials they seek from the FBI and the Terrorist Screening Center are relevant, both subpoenas are quashed.

B.  <u>Good Faith and Not a "Fishing Expedition"</u>

The subpoenas are quashed for a second reason: the defendants' failure to show

that they applied for the subpoenas in good faith and not as part of a "fishing

expedition."  *See Nixon*, 418 U.S. at 699.[5]  This *Nixon* factor relates to the specificity

with which a defendant describes the items he or she seeks.  *See id.*; *Weissman*, 2002

WL 31875410 at *1 ("Defendant's argument [that the subpoenaed materials may have

some use beyond impeachment] fails because the *Nixon* standards prohibit the use of a

Rule 17(c) subpoena as a fishing expedition.").  In other words, a court is more likely to

find that a defendant applied for a subpoena in good faith and not as part of a "fishing

expedition" if the defendant specifically describes the materials he or she seeks.

On the other hand, when, as here, the defendant asks for "any" and "all"

documents, and otherwise describes the subpoenaed materials in general terms, the

defendant likely is using the subpoena to fish for discovery.  *See Weissman*, 2002 WL

31875410 at *1 ("If the moving party cannot reasonably specify the information

contained or believed to be contained in the documents sought but merely hopes that

something useful will turn up, the requirement of specificity will not have been met.").

This specificity requirement is important because "Rule 17(c) is not to be used as a

method of discovery in criminal cases."  *Ceballo*, 2003 WL 21961123, at *1 (citing

*United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995)).  And district judges

are the gatekeepers who must ensure "that [R]ule 17(c) is not turned into a broad

---

[5] The Court assumes that the defendants could meet the second and third *Nixon*
requirements: inability to otherwise obtain the materials and inevitable delay of the trial if
they were forced to get them some other way.

discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16." *Id.* (quoting *Cherry*, 876 F. Supp. at 552).

Here, the materials targeted by the subpoenas are described in only general terms.  For example, the categories of items the defendants seek in the FBI subpoena begin with the phrases: "Any correspondence"; "Any records or documents"; and "All records."  Docket Item 348-1 at 3.  Similarly, the defendants began their description of the items they seek from the Terrorist Screening Center as "All records of correspondence by any means."  *Id.* at 5.  Such broad and sweeping language suggests that the defendants are not aware of, and do not seek, any specific document in the hands of the FBI or the Terrorist Screening Center that they know exists; rather, the implication is that the defendants hope that by collecting the documents they describe, they might find some documents that will somehow be helpful to their defense.

This Court does not mean to imply that the defendants acted with bad intent in applying for the subpoenas, as the phrase "bad faith" might suggest in other contexts. In fact, the defendants seem to sincerely believe that the FBI and the Terrorist Screening Center may possess some documents described in the subpoenas.  But sincere belief is not the standard under Rule 17(c) or under *Nixon* and its progeny. Considering the language in the subpoenas and the procedural history of this case, the subpoenas ask for things to which the defendants are simply not entitled.  *See Ceballo*, 2003 WL 21961123, at *1.

Therefore, the defendants did not sustain their burden of demonstrating that the subpoenas were not intended as a "fishing expedition" for additional discovery, and the subpoenas are quashed for that reason as well.

**Conclusion**

In sum, because the defendants have not shown that the materials they seek in their Rule 17(c) subpoenas to the FBI and the Terrorist Screening Center are relevant and specifically identified so as not to be part of a "fishing expedition," the government's motion to quash is GRANTED.  The Court need not, and does not, reach the other arguments made by the government in support of its motion to quash.

Therefore, and for the reasons stated above, IT IS HEREBY ORDERED that the government's motion to quash the defendants' Rule 17(c) subpoenas to the FBI and the Terrorist Screening Center (Docket Item 348) is GRANTED.


SO ORDERED.



DATED:   July _____22_____, 2016
                Buffalo, New York

                                                    _____**/s/ Lawrence J. Vilardo**_____

                                                    LAWRENCE J. VILARDO
                                                    United States District Judge