UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

 v.

STEVE S. JABAR and DEBORAH
BOWERS,

   Defendants.
_____

09-CR-170
DECISION & ORDER

   On September 2, 2016, after a five-week jury trial, defendants Steve S. Jabar and Deborah Bowers were convicted of wire fraud, conspiring to commit wire fraud, and making several materially false statements.  *See* Docket Items 413 and 420.  The defendants then moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and for a new trial under Federal Rule of Criminal Procedure 33.  Docket Items 398, 399, 433.  This Court granted the defendants' Rule 29 motion with respect to counts 1 and 4 (wire fraud and wire fraud conspiracy) and denied the Rule 29 motion with respect to counts 11, 12, 13, and 14 (materially false statements).  Docket Item 473.  The Court denied the Rule 33 motion with respect to the materially false statement counts and denied it as moot with respect the counts on which the Court had granted a judgment of acquittal.  *Id.*

   The defendants and the government both appealed, and the Second Circuit affirmed in part and reversed in part.  Docket Item 692; *United States v. Jabar*, 19 F.4th 66 (2d Cir. 2021).  More specifically, the Second Circuit affirmed this Court's denial of the defendants' motions for a judgment of acquittal and a new trial on the false statement counts but reversed this Court's judgment of acquittal on the wire fraud and

wire fraud conspiracy counts.  *Jabar*, 19 F.4th at 72.  The Second Circuit then remanded to this Court "for the entry of judgment consistent with [the Second Circuit's decision] and for consideration of the motion for a new trial on the wire fraud and wire fraud conspiracy counts."  *Id.*

Following the Second Circuit's remand, the defendants filed a renewed motion for a new trial under Rule 33, along with a motion to decide what they called the "[u]nresolved Rule 29 [m]otion to [d]imiss [c]ounts 1 and 4."  Docket Item 704.  The government responded, Docket Item 711, and the defendants replied, Docket Item 718.

This Court heard oral argument and ordered further briefing on the effect, if any, of the Supreme Court's intervening decision in *Ciminelli v. United States*, 598 U.S. 306 (2023).  *See* Docket Item 721.  The defendants filed a brief addressing that issue, Docket Item 728; the government responded, Docket Item 732; and the defendants replied, Docket Item 735.  This Court then held further oral argument and reserved decision.[1]  *See* Docket Item 737.

## LEGAL PRINCIPLES

**I.     RULE 29 MOTION**

A defendant seeking a judgment of acquittal faces a heavy burden:  A court can grant a Rule 29 motion only if no "rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt."  *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) (quoting *United States v. Moore*, 54 F.3d 92, 100 (2d Cir. 1995)).  Stated another way, "[a] court may enter a judgment of acquittal

---

[1] Following oral argument, the defendants also submitted an unsolicited post-argument brief, which this Court has read and considered.  Docket Item 739.

2

only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" See *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

In conducting its analysis, the court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (quoting *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017)).  That being said, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (citation and internal quotations omitted).

## II.     RULE 33 MOTION

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "A district court should grant a new trial motion if it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (citation and internal quotation marks omitted).  When considering a motion for a new trial, a district judge "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner."  *Id.* (citation and internal quotation marks omitted); *see also United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (stating that a court also may make determinations as to witness credibility in deciding a Rule 33 motion).  But while courts have greater

deference under Rule 33 than Rule 29, they still must exercise their Rule 33 authority "sparingly" and only in "the most extraordinary circumstances"; in other words, "[t]here must be a real concern that an innocent person may have been convicted." *Sanchez*, 969 F.2d at 1414.

## DISCUSSION[2]

### I. RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

On remand, the defendants "renew their undecided Rule 29 [m]otion to vacate [c]ounts 1 and 4 on the ground of lack of jurisdiction." Docket Item 704 at 9.[3] More specifically, the defendants contend "that the transmission of the first quarterly report, the jurisdictional element upon which [c]ounts 1 and 4 depend for jurisdiction, occurred months after the charged scheme was complete, and therefore could not have been in furtherance [of] it." *Id.* at 10. That issue, the defendants say, was left undecided by this Court and the Second Circuit. *Id.* "The second undecided issue," according to the defendants, "is that the government failed to disprove beyond a reasonable doubt that the defendant[s] acted in good faith." *Id.*

The government counters that the defendants' renewed Rule 29 motion is barred by the mandate rule. Docket Item 711 at 3; *see United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (explaining that "[t]he mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or

---

[2] The Court assumes the reader's familiarity with the factual background and will recount the facts only as necessary to explain its decision.

[3] Page numbers in docket citations refer to ECF pagination.

impliedly decided by the appellate court'" (emphasis omitted) (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir.1993))). This Court agrees.

In this case, the Second Circuit held that "[v]iewing the evidence in the light most favorable to the government, . . . there was sufficient evidence for the jury to convict on the wire fraud and related counts." *Jabar*, 19 F.4th at 71. "Because [this C]ourt did not reach [the] defendants' motion for a new trial on these counts," the Second Circuit "remand[ed] for [this Court] to consider the [Rule 33] motion in the first instance." *Id.*

As the government observes, this mandate "has two directives." Docket Item 711 at 4. "First, it reverses the Court's decision granting the defendants' motion for judgment of acquittal on the fraud counts and directs the Court to enter judgment." *Id.* "And second, it instructs the Court to 'consider[] . . . [the] defendants' motion for a new trial on the wire fraud and [the] wire fraud conspiracy counts.'" *Id*. (quoting *Jabar*, 19 F.4th at 85). Those two directives—and the Second Circuit's explicit finding that "there was sufficient evidence for the jury to convict on the wire fraud and related counts," *Jabar*, 19 F.4th at 71—leave no room for this Court to revisit the defendants' Rule 29 arguments.

Nor does the Supreme Court's decision in *Ciminelli* change anything. The elements of a wire fraud claim are: (1) "a scheme to defraud" (which includes fraudulent intent), (2) "money or property as the object of the scheme," and (3) "use of . . . wires to further the scheme." *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015). *Ciminelli* involved the "right-to-control theory" and the question of whether "potentially valuable economic information" constituted "property" under the second element. *See* 598 U.S. at 308-09. "Under the right-to-control theory, a defendant is guilty of wire fraud

5

if he schemes to deprive the victim of 'potentially valuable economic information' 'necessary to make discretionary economic decisions.'" *Id.* at 309 (quoting *United States v. Percoco*, 13 F.4th 158, 170 (2d Cir. 2021)).  *Ciminelli* held that because "federal fraud statutes criminalize only schemes to deprive people of traditional property interests" and "[b]ecause 'potentially valuable economic information' 'necessary to make discretionary economic decisions' is not a traditional property interest, . . . the right-to-control theory is not a valid basis for liability under [section] 1343."  *Id.*

But this case involved obtaining money—that is, "traditional property interests" and not "potentially valuable economic information."  *Id.*; *see United States v. Bankman-Fried*, 680 F. Supp. 3d 289, 305 (S.D.N.Y. 2023) (finding that *Ciminelli* was inapplicable to case where "the indictment plainly allege[d] a scheme to obtain 'money or property,' not a scheme to deprive a bank of 'valuable economic information'").  In fact, the Second Circuit found just that:  "Based on the record, there was sufficient evidence . . . that from the outset the defendants never intended to use the entirety of *the $500,000 grant or the $350,000 that they actually received* on [the radio station of the defendants' non-profit organization, Opportunities for Kids International, Inc. ('OKI')], but rather they intended to divert a portion for their personal use, either as 'free money' or as a loan."  *Jabar*, 19 F.4th at 79-80 (emphasis added).  "By diverting a portion of the grant for purposes not authorized under the Cooperation Agreement and unrelated to [the radio station]," the court found, "the scheme would necessarily deprive [the United Nations ('UN') Development Fund for Women] *of money or property* while also depriving it of the proper management and documentation of contributions entrusted by donor countries to [the fund's] care."  *Id.* at 80 (emphasis added).

6

The defendants nonetheless argue that *Ciminelli* applies because in that case, as here, "the government sought relief using a theory that it had not argued below." Docket Item 728 at 15. More specifically, the defendants note that the government argued in *Ciminelli* that even if the right-to-control theory presented at trial were held invalid, the Supreme Court could "affirm Ciminelli's convictions on the alternative ground that the evidence was sufficient to establish wire fraud under a traditional property-fraud theory." *See id.* at 13 (quoting *Ciminelli*, 598 U.S. at 316). And the defendants note that the Supreme Court declined to do that, explaining that the government was asking the Court to "to assume not only the function of a court of first view, but also of a jury," which is "not [an appellate court's] role." *See id.* (bold omitted) (quoting *Ciminelli*, 598 U.S. at 317).

But the Second Circuit explicitly foreclosed that argument here, finding that "[t]he theory that the UN was deprived of the benefit of the bargain was charged in the indictment, presented to the jury, and responded to by the defense."[4] *Jabar*, 19 F.4th at 82 n.60. In other words, the indictment charged that the defendants defrauded the UN of its traditional property interests, and the Second Circuit found that the proof adequately established that at trial. *See id.* The defendants' disagreement with that finding is not something this Court has the power to address.

---

[4] The Second Circuit noted that "[t]he closely related theory that the UN was denied the 'right to control' its assets because defendants misrepresented 'potentially valuable economic information' was not explicitly articulated at trial." *Jabar*, 19 F.4th at 82 n.60. The court explained that the theories were related "because liability under either theory turns on the materiality of the misrepresentations and requires us to consider whether the alleged deception 'affect[ed] the very nature of the bargain.'" *Id.* (quoting *United States v. Johnson*, 945 F.3d 606, 612 (2d Cir. 2019)). In other words, as the government observes, "the theories are related as to an element of fraud"—intent—"that *Ciminelli* did not address." *See* Docket Item 732 at 6.

7

Because this Court is bound by the Second Circuit's mandate, the defendants' renewed Rule 29 motion is denied.

## II. MOTION FOR A NEW TRIAL ON THE FRAUD COUNTS

The defendants move for a new trial on the fraud counts on several grounds. For the reasons explained below, the Court finds that all of their arguments lack merit.

### A. The Government's Theory of the Case

The defendants argue that they are entitled to a new trial on the fraud counts first because the Second Circuit affirmed their convictions on grounds different from those presented to this Court. *See* Docket Item 704 at 29-55. As in their renewed Rule 29 motion, however, the defendants really are asking this Court to disagree with the Second Circuit—something it lacks the power to do.

As just noted, the Second Circuit explicitly found that the government's "theory that the UN was deprived of the benefit of the bargain was charged in the indictment, presented to the jury, and responded to by the defense." *Jabar*, 19 F.4th at 82 n.60. Any disagreement the defendants have with that finding is—as the government observes—not a question for this Court. *See* Docket Item 711 at 16 ("Rule 33 is not a tool to express disagreement with a court of appeals.").

### B. Intent to Defraud

The defendants next argue that the government failed to prove "intent to defraud." *See* Docket Item 704 at 44-53. But as the government notes, "[t]he Second Circuit rejected that argument" as well. Docket Item 711 at 21; *see Jabar*, 19 F.4th at

8

79-83.  And "Rule 33's modest expansion of a Court's ability to weigh evidence does not compel a different conclusion."  *See* Docket Item 711 at 21.

### C. Agent Klimczak's Testimony

The defendants also contend that they are entitled to a new trial because the government knowingly offered false testimony from Agent Michael Klimczak regarding the government's ability to conduct an investigation in Iraq.  *See* Docket Item 704 at 60-69.  As the government observes, however, this Court already found that Agent Klimczak "did not falsely testify about the government's ability to conduct investigations abroad, and any equivocal testimony on that topic was clarified on re-cross and re-direct examinations."  *See* Docket Item 711 at 23 (quoting Docket Item 473 at 27).  Moreover, the Second Circuit affirmed the defendants' convictions on the false statement counts based on, among other things, Agent Klimczak's testimony.  *See Jabar*, 19 F.4th at 83-85.  So for both those reasons, the defendants' argument is misplaced.

### D. Evidentiary Rulings

The defendants next raise several arguments based on this Court's evidentiary rulings at trial.  To obtain a new trial based on an evidentiary ruling, the defendants must show not only that the ruling was incorrect but that "it would be a 'manifest injustice to let the verdict stand.'"  *United States v. Mejia*, 948 F. Supp. 2d 311, 319 (S.D.N.Y. 2013) (citation omitted).

#### 1. Evidence of financial difficulties

The defendants argue that this Court erred when it admitted evidence of defendant Jabar's "financial difficulties."  *See* Docket Item 704 at 55-57.  According to

9

the defendants, this evidence was "simply designed to show bad character, and not any relevant 'motive.'" *Id.* at 57.  This Court disagrees.

As the government observes, "a person who is in difficult financial straits might very well be incentivized to do things—such as engage in fraud—that they might not otherwise do."  Docket Item 711 at 24.  Therefore, "a person's financial need has 'a[] tendency to make . . . more [. . .] probable' that a person had the intent to engage in illegal conduct that would give him access to money."[5]  *Id.* (quoting Fed. R. Evid. 401(a)).  For that reason, this Court did not err in admitting the evidence of Jabar's financial difficulties.

### 2. Evidence of non-filing of tax forms

The defendants also take issue with this Court's admission of evidence that OKI had not filed tax forms related to the receipt of the grant funds at issue.  *See* Docket Item 704 at 58.  According to the defendants, "[t]here was no clear purpose for this except to show propensity to violate the law, and later 'intent to defraud,' contrary to representations on the admissibility of the evidence."  *Id.*

But on the contrary, and as the government observes, "the defendants' failure to file an IRS form on which they would have had to report the UN grant is circumstantial evidence[] that they were trying to hide what they had done with the money."  Docket Item 711 at 25 (alteration in original) (citation and internal quotation marks omitted).  As this Court found during trial, that evidence was not covered by Rule 404(b) because it was "inextricably intertwined with the evidence regarding the charged offense" and

---

[5] The remainder of the defendants' argument on the financial difficulties evidence has to do with this Court's jury instructions, which the Court will address below.  *See* Section II.F, *infra*.

10

"necessary to complete the story of the crime [on] trial." *Id.* at 25-26 (alteration in original) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)). This Court finds no reason to revisit that ruling.

### 3. Exhibit 30B

Finally, the defendants contend that this Court should not have admitted Exhibit 30B, an email from defendant Bowers to Bushra Jamil—with a copy to Jabar—listing names and contact numbers for OKI's Board of Directors. *See* Docket Item 441 at 10-24. As the government notes, this Court already considered—and rejected—this argument in the context of the defendants' Rule 33 motion on the false statement counts. *See* Docket Item 711 at 26. And the Second Circuit affirmed that decision. *See Jabar*, 19 F.4th at 85 (affirming this Court's denial of "a new trial on the false statement counts").

Moreover, this Court again concludes—as it did during trial and on the first Rule 33 motion—that it correctly admitted Exhibit 30B. *See* Docket Item 473 at 28-30. As the government argued at trial, the email in Exhibit 30B is circumstantial evidence that the defendants were "covering their tracks" and "trying to make it look like things that they did were legitimate." *See* Docket Item 441 at 12-13. And as this Court previously found, there is no reason to believe that Exhibit 30B "caused the jury to convict the defendants on the false statement charges," particularly given that the jury also acquitted Bowers on one of those charges. *See* Docket Item 473 at 29-30.

### E.    The Government's Closing Arguments

The defendants next claim that the government's closing argument was "[i]nflammatory and improper." Docket Item 704 at 70 (bold omitted). More specifically,

11

the defendants argue that the prosecutor told the jury that Bowers had "lied" in a quarterly report. *Id.* What is more, the defendants say, "[t]here was no evidence that the quarterly report asserted that all the finds expended derived directly from the UN grant." *Id.*

"To obtain a new trial based on a prosecutor's purportedly improper statement made in summation, a defendant bears the heavy burden of demonstrating that the alleged misconduct is so severe and significant as to result in the denial of the defendant's right to a fair trial." *United States v. Zodhiates*, 235 F. Supp. 3d 439, 456 (W.D.N.Y. 2017) (alterations, citation, and internal quotation marks omitted). Thus, "a court will not lightly overturn a conviction solely on the basis of a prosecutor's misstatement in summation." *Id.* (alteration, citation, and internal quotation marks omitted).

The defendants have not met this high bar. This Court agrees with the government that its closing was "simply argument" and "not vouching, . . . not inflammatory, and . . . not demeaning to the defendants or defense counsel." *See* Docket Item 711 at 27. The Court therefore declines to order a new trial based on the government's summation.

### F. Jury Instructions

The defendants also contend that because this Court's jury instructions on fraud were erroneous, they are entitled to a new trial. *See* Docket Item 704 at 70-73. More specifically, the defendants say that this Court's fraud instructions ran afoul of the Second Circuit's decision in *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650 (2d Cir 2017), Docket Item 704 at 70-71; improperly told the

12

jury that "proof of motive may bear on intent," *id.* at 71-72; and failed to properly instruct the jury on the elements of wire fraud, *id.* at 72-73.

*Countrywide* held that "the common law requires proof—other than the fact of breach—that, at the time a contractual promise was made, the promisor had no intent ever to perform the obligation." 822 F.3d at 660. Accordingly, this Court instructed the jury as follows:

> To satisfy its burden with respect to the wire fraud charges, the government must prove to you beyond a reasonable doubt that the defendants intended to defraud the United Nations *in connection with applying for and obtaining the United Nations grant. Evidence that the defendants may have subsequently breached a contract or later misused funds does not establish intent to defraud.*
>
> You have heard evidence about the defendants using funds from money that [OKI] received from the United Nations for the defendants' personal expenses, in other words, that the defendants may have breached the terms of the contract OKI had with the United Nations. You may consider this evidence as circumstantial evidence of the defendants' intent to defraud. But even if you accept it, *this evidence alone does not establish that a defendant intended to defraud the United Nations* in connection with applying for and obtaining the United Nations grant, which is what the law requires.
>
> Accordingly, *without more, evidence that a defendant breached the contract with the United Nations, even if he or she did so intentionally, does not establish that the defendant had the intent to defraud that the law requires. And you may not base a finding that the government established the intent element of the wire fraud . . . charges solely on such evidence*.

Docket Item 437 at 43-44 (emphases added).

The government argues that this "Court's instruction fits hand-in-glove with *Countrywide*" and that the defendants "seek a new trial because they wish to wordsmith the Court's jury instructions." Docket Item 711 at 29. This Court agrees. This Court told the jury, as *Countrywide* instructs, that the government was required to prove intent to defraud "in connection with applying for and obtaining the United Nations Grant"—in

13

other words, at the time of the promise.  And the Court further instructed the jury that evidence of a breach of contract alone was not sufficient to prove intent and that more was required.  Contrary to the defendants' suggestion, this Court was not required to "describe what that 'more' could be."  *See* Docket Item 704 at 71.

This Court also instructed the jury that "[m]otive is not an element of the charge of the crimes with which the defendants are charged," and that "[a]s a result, proof of motive cannot establish that a defendant is guilty of a particular charge."  Docket Item 437 at 26.  The Court then specifically addressed the evidence of Jabar's financial difficulty and the limited purpose for which the jury could consider that evidence:

> You have heard evidence that Mr. Jabar was experiencing financial difficulties both before and at the time of OKI's application for the United Nations grant.  This evidence was admitted for a limited purpose; that is, on the issue of Mr. Jabar's motive to participate in a scheme to defraud.
>
> As I just instructed you, motive is not an element of the crimes charged in the indictment.  But motive, if proven, may be considered by you as bearing on a defendant's intent.  Accordingly, if you find beyond a reasonable doubt that a scheme to defraud existed, then you may consider this evidence of Mr. Jabar's financial difficulties in deciding whether Mr. Jabar had a motive to participate in the scheme to defraud.  If you find that he had such a motive, then you may consider that motive in determining his intent.

*Id.* at 26-27.  This instruction addressed the defendants' concern that the jury might "substitute evidence of . . . Jabar's 'financial difficulty' for proof of 'fraudulent intent.'" *See* Docket Item 704 at 71 (citation omitted).  Indeed, the Court explicitly told the jury that motive could bear on intent but that "proof of motive cannot establish that a defendant is guilty of a particular charge."  Docket Item 437 at 26-27.  Thus, this Court sees no risk that the jury used the motive evidence for an improper purpose.

Regarding the elements of the wire fraud counts, the Court instructed the jury as follows:

14

> To satisfy its burden with respect to the wire fraud charges in [c]ounts 2 through 4 of the indictment, the government must prove each of the following three essential elements with respect to each defendant beyond a reasonable doubt:
>
> First, that there was a scheme to defraud or to obtain money or property by false pretenses, representations, or promises, as alleged in the wire fraud counts in the indictment; [s]econd, that the defendant knowingly devised the scheme to defraud, or knowingly and willfully participated in the scheme to defraud knowing of its fraudulent nature and with the specific intent to defraud, or that he or she knowingly and intentionally aided and abetted others in the scheme or plan; and [t]hird, that in carrying out the scheme, the defendant used or caused the use of an interstate or international wire communication as specified in the indictment.

Docket Item 437 at 35-36. Those three elements comport with Second Circuit caselaw. *See, e.g., United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000). As the government observes, "the defendants do not (and cannot) show why a manifest injustice would result if the Court deviated from Second Circuit precedent by splitting fraud into seven elements[] rather than three," and "[t]he defendants' disagreement with Second Circuit case[]law is not a reason to find that a manifest injustice occurred." Docket Item 711 at 29.

For all those reasons, this Court's jury instructions do not warrant a new trial.

### G.     Right to Present a Defense

The defendants also claim that they were denied the right to present evidence about the "animus and ulterior motives of the government." *See* Docket Item 704 at 73-79 (emphasis omitted). More specifically, the defendants suggest that that they were "entitled to have the jury consider the ulterior motivation [of] agents to 'get' Jabar." *Id.* at 73.

But—as the government observes—"the defendants do not show how this evidence was relevant to the any of the elements the government was required to

15

prove." See Docket Item 711 at 30. On the contrary, as this Court found when it quashed the defendants' subpoenas to the FBI and the Terrorist Screening Center, "communications between the investigating agents and others employed by the FBI and the Terrorist Screening Center regarding Jabar's employment" with the United States government "ha[ve] nothing to do with this case." Docket Item 357 at 5; see id. at 6 (explaining that even if evidence of an ulterior motive might be relevant to a selective prosecution claim, it is not relevant for the purposes of the trial). For those reasons, this Court's decision precluding the defendants' "ulterior motive" evidence does not warrant a new trial.

### H. The Defendants' Right to Testify

For the first time, the defendants argue that Bowers chose not to testify because of the manner in which the government cross-examined defense witnesses. See Docket Item 704 at 82-87. More specifically, the defendants say that that "the vicious attack on . . . Jamil was calculated to drive the defendants from the stand and had its [intended] effect." Id. at 82. In fact, they say, for "Bowers[,] it was key to her decision not to take the stand." Id.; see also id. at 87 (explaining that "Bowers [made] clear that what was allowed to be done to . . . Jamil affected her decision, driving her from the stand").

In particular, the defendants take issue with the government's asking Jamil about having a personal, romantic relationship with Jabar. See id. at 83-86. And, the defendants say, they "assumed that nothing would stop [the government] from suggesting in any way possible that . . . Bowers and Jabar had a 'personal relationship' too." Id. at 87.

16

As an initial matter, again as the government observes, the defendants failed to raise that issue in their initial Rule 33 motion, and it is therefore untimely. *See* Docket Item 711 at 31-32. But regardless, the defendants' argument lacks merit.

To be sure, cross examination can be uncomfortable for witnesses, and there are many strategic considerations that go into whether or not a defendant decides to testify. But Bowers cites no authority to support her argument that, as the government puts it, "ordinary trial procedures such as cross-examination (rather than, for example, extra-trial conduct such as threatening defense witnesses) can unconstitutionally drive a defendant from the stand." *See id.* at 33-34. What is more, as the government notes, "Bowers'[s] affidavit shows that she made the decision not to testify of her own accord, after consulting with highly-experienced defense counsel." *See id.* at 34. "That [she] now wishes to revisit that decision is not a basis to order a new trial." *Id.*

### III.   MOTION FOR A NEW TRIAL ON THE FALSE STATEMENT COUNTS

Notwithstanding the Second Circuit's clear statement that "we . . . AFFIRM the district court's denial of . . a new trial on the false statement counts," *Jabar*, 19 F.4th at 85, the defendants nonetheless seek another bite at that apple. *See* Docket Item 704 at 88-97. And their request that this Court reconsider its denial of their Rule 33 motions on the false statement counts is barred by the mandate rule.

Again, the Second Circuit's instructions to this Court were quite clear: "we . . . REMAND with directions for the entry of judgment consistent with the foregoing and for consideration of defendants' motion for a new trial *on the wire fraud and wire fraud conspiracy counts*." *Jabar*, 19 F.4th at 85 (emphasis added). The defendants' motion for a new trial on the false statement counts therefore is denied.

**CONCLUSION**

For the reasons stated above, the defendants' renewed motions under Rule 29 and Rule 33 are DENIED. The Court will schedule a date for resentencing.

SO ORDERED.

Dated:     August 22, 2024
           Buffalo, New York

                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE